# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DIANE YOUNG,                    :

    Plaintiff,              :
                         Case No. 3:11cv00245

vs.                            :

                           District Judge Thomas M. Rose
MICHAEL J. ASTRUE,             :    Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,       :

    Defendant.              :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

Plaintiff Diane Young sought financial assistance from the Social Security

Administration by applying for Disability Insurance Benefits (DIB) in October 2006,

alleging disability since December 16, 2003. (*PageID## 128-32*). She claims disability

from total knee replacement on both knees and anxiety. (*PageID# 165*).

After various administrative proceedings, Administrative Law Judge (ALJ)

Amelia G. Lombardo denied Plaintiff's DIB application based on her conclusion that

Plaintiff's impairments did not constitute a "disability" within the meaning of the Social

Security Act. (*PageID## 46-56*). The ALJ's nondisability determination and the

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

resulting denial of benefits later became the final decision of the Social Security

Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C.

§405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the

Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. # 10), the

administrative record (Doc. # 5), and the record as a whole.

Plaintiff seeks, at minimum, remand to correct certain errors. The Commissioner

seeks an Order affirming the ALJ's decision.

## II.    BACKGROUND

### A.    <u>Plaintiff's Vocational Profile and Testimony</u>

Plaintiff turned 50 years old on September 28, 2005, and is thus considered to be

"closely approaching advanced age" for purposes of resolving her DIB claim. *See* 20

C.F.R. §404.1563(d); *see also PageID##* 55, 207. Plaintiff has a high school education

and completed two years of college. (*PageID##* 170-71). She has worked in a fast food

restaurant and as a department manager at a retail store. (*PageID##* 166, 177-79).

Plaintiff testified at the administrative hearing[2] that she was 5' 3 ½" tall and

weighed 178 pounds. (*PageID#* 67). She lived in a two-story townhouse with her

husband. (*PageID##* 67-68). She testified that she stopped driving approximately three

or four years ago because she has panic attacks in traffic. (*PageID#* 68). Plaintiff

---

[2]Because resolution of the issues presented in this case do not turn on the vocational expert
testimony, the Court will not summarize the vocational expert testimony presented at the administrative
hearing.

reported that her last job was as a retail department manager at Target. (*PageID## 69-70*). She left her job in 2003 when she began having anxiety and her family doctor began prescribing Lexapro, which helped for a while. (*PageID# 71*). She also testified that her "knees started hurting real bad" and she tried cortisone injections. (*Id.*). Eventually, her orthopedist, Dr. Paley, partially replaced her right knee and later performed a total knee replacement after she fell and re-injured it. (*Id.*).

Plaintiff testified that she is unable to work due to her knee pain, as well as shoulder pain, carpal tunnel syndrome, tremors, thyroid disorder, fibromyalgia, neck pain, Graves' disease, anxiety, panic disorder, and depression. (*PageID## 72-74*). She said that she had surgery on her shoulder and also carpal tunnel release surgery. (*Id.*). Plaintiff testified that she takes three OxyContins per day. (*Id.*). Plaintiff stated that Dr. Paley suggested that she could either get her own cane or he could give her a prescription for a cane. (*Id.*). Subsequently, she was able to get her own cane. (*PageID# 76*). She testified that she needs a cane to help her walk and that she can barely make it across the street. (*Id.*).

Plaintiff estimated that she can only stand for five to ten minutes and sit for five to ten minutes. (*PageID# 77*). She acknowledged problems with her arms, hands, and fingers (in that she has difficulty opening doors, holding books to read, lifting potatoes, and lifting her grandson). (*PageID## 76, 77*). She alleged difficulty climbing stairs, and even difficulty cooking because she forgets what she is doing. (*PageID# 79*). She testified that she receives help from family members when doing household chores.

(*PageID##* 79-80).  She testified that her memory is bad and she often freezes up due to anxiety when she is in a crowd.  (*PageID#* 79).

When describing a typical day, Plaintiff reported that when she gets out of bed in the morning, she takes medication and goes downstairs (either by walking or moving from step to step while sitting), gets an ice pack, cleans a little bit, and rests on the couch. (*PageID#* 81).  She stated she typically just stays in bed. (*Id.*).  Plaintiff reported that she can no longer cross-stitch, use a vacuum, or hold a broom.  (*PageID#* 82).

Turning to other evidence, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence which eliminates the need for a repeated description here. (Doc. #6 at *PageID##* 903-08; Doc. #9 at *PageID##* 923-28).  Where applicable, the Court will identify the medical evidence relevant to its decision.

## III.    ADMINISTRATIVE REVIEW

### A.    <u>"Disability" Defined</u>

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.  A DIB applicant bears the ultimate

burden of establishing that he or she is under a "disability."  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs. of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope.  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

### B. <u>Social Security Regulations</u>

Administrative regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See PageID##* 47-48; *see also* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity,[3] can he perform his past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C.  **ALJ Lombardo's Decision**

ALJ Lombardo's pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff has the severe impairments of the residuals of a right knee arthroscopy and total knee replacement in 2007; lumbar and cervical degenerative disc disease and osteoarthritis; obesity (BMI of 31); adjustment disorder; and panic disorder with mild agoraphobia.  (*PageID#* 48).  The ALJ determined that the residuals of Plaintiff's left shoulder surgery, the residuals of carpal tunnel syndrome and release surgery, head tremors, hypothyroidism, and possible Graves' syndrome are nonsevere. (*PageID#* 49).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings.  (*Id.*).

---

[3]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

At Step 4, ALJ Lombardo concluded that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to perform light work,[4] except that Plaintiff is restricted to occasional kneeling, crawling, and climbing upstairs. (*PageID#* 52). Furthermore, Plaintiff is restricted to performing unskilled work and to jobs that involve only minimal contact with the general public. She is also restricted to low stress jobs, no assembly line work, and jobs that do not impose production quotas. (*Id.*). Within her discussion of Plaintiff's RFC, the ALJ emphasized that she carefully considered Plaintiff's obesity pursuant to the provisions of SSR 02-1p. (*PageID#* 54).

The ALJ concluded at Step 4 that Plaintiff was unable to perform her past relevant work as a department manager and as a sales clerk. (*PageID#* 55).

At Step 5, the ALJ used sections 202.21 and 202.14 of the Grid[5] as a framework for deciding, and considering Plaintiff's age, education, work experience, and RFC, found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform on a sustained basis. (*Id.*).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability, and she was therefore not eligible for DIB. (*PageID#* 56).

## IV.    JUDICIAL REVIEW

---

[4] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

[5] *See* Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[Even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.     DISCUSSION

### A.     Plaintiff's Contentions

Plaintiff assigns two errors in this case. First, Plaintiff contends that the ALJ failed to grant proper weight to the opinion of treating psychiatrist, Dr. Onady. (Doc. #6 at *PageID#* 910). According to Plaintiff, instead of granting proper weight to the opinion of Dr. Onady, the ALJ relied upon the mental restrictions opined by non-examining Ohio Bureau of Disability Determination (BDD) reviewer, Dr. Brown. (*Id.* at *PageID#* 912). Next, Plaintiff argues that the ALJ erred by failing to properly consider the functional limitations imposed by Plaintiff's obesity. (*Id.* at *PageID#* 913).

### B.     Medical Source Opinions

#### 1.

#### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ. *Blakley,* 581 F.3d at 406 (6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004). A treating physician's opinion is given controlling weight only if it is both well supported by medically

acceptable data and if it is not inconsistent with other substantial evidence of record.  (*Id.*).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. §404.1527(d)(1).  Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p.  Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization.  *See* 20 C.F.R. §404.927(d), (f); *see also* Ruling 96-6p at *2-*3.

## 2.

## Non-Treating Medical Sources

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in

disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2.  Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source.  *See id*. at *2-*3.  The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. §404.1527(b).  To fulfill this promise, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in §404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1527(f); *see also* Ruling 96-6p at *2-*3.

   **C.**     **Analysis**

**1.**

**Weight assigned to medical source opinions.**

   Plaintiff argues that the opinion of her treating psychiatrist, Dr. Onady, should have been given controlling weight by the ALJ.  Plaintiff maintains that contrary to ALJ Lombardo's findings, when viewed in their entirety, Dr. Onady's assessments are not inconsistent.  According to Plaintiff, the ALJ's assertion is unsupported by the record and is a mischaracterization of the evidence.  (Doc. # 6 at *PageID#* 911).  Plaintiff also argues that Dr. Onady's findings from February 2007, which are consistent with the more recent assessment from May 2008, were not even mentioned in ALJ Lombardo's decision.  (*Id.*). Finally, Plaintiff contends that the treatment notes from Comprehensive Counseling Service (CCS) support Dr. Onady's assessments.  (*Id.* at *PageID#* 912).

Plaintiff treated with psychiatrist, Alice Onady, M.D., or a counselor at CCS, from January 30, 2007, through July 20, 2009. (*PageID##* 468-77, 753-844, 899-901). On February 22, 2007, Dr. Onady initially diagnosed adjustment disorder with mixed emotions, pain disorder, and panic disorder with mild agoraphobia, and described Plaintiff as histrionic. Dr. Onady assigned a GAF of 50[6] and prescribed medications. (*PageID##* 473-77).

Dr. Onady completed a mental status questionnaire, in which she reported that Plaintiff's abilities to remember, understand, and follow directions, to maintain attention, sustain concentration, persist at tasks, and complete tasks in a timely fashion, were "fair." She opined that Plaintiff's abilities with respect to social interaction, tolerating pressure, and adaptation were "poor." She also opined that Plaintiff's ability to deal with the work pressures of performing simple, repetitive tasks, was poor due to anxiety and isolating behavior. (*PageID##* 470-72).

Treatment notes from CCS suggest that medication changes decreased Plaintiff's anxiety attacks and their intensity; she was "looking better"; she was "looking well"; her mood was less or only mildly dysphoric; her affect was appropriate; she was "more hopeful"; and her mood was euthymic. (*PageID##* 754, 767, 785, 790, 807). The treatment notes also reveal that Plaintiff consistently lacked suicidal or homicidal

---

[6]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 41-50 indicates "severe symptoms ... or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." (*Id.*).

ideations. (*PageID##* 785, 795, 797, 809). Plaintiff expressed anxiety due to her husband's health problems and behavior. (*PageID##* 759, 793). In April 2007, Dr. Onady noted that Plaintiff walked with a cane "theatrically." (*PageID#* 815). In April 2008, Plaintiff was "loud + scattered in her speech and overly ingratiating." (*PageID#* 770). Dr. Onady noted that her mood swings were dependent on situational problems. (*Id.*).

Dr. Onady's May 2008 interrogatory responses indicate diagnoses of major depression, generalized anxiety, panic disorder with agoraphobia, pain disorder, and histrionic personality disorder. (*PageID#* 647). Dr. Onady opined that Plaintiff would be unable to withstand the pressure of meeting normal work productivity and accuracy, and would also be unable to sustain attention and concentration sufficient to meet normal work standards due to her anxiety. She opined that Plaintiff is easily agitated, has poor social skills, and would require "very close supervision" to carry out simple work instructions due to her poor memory. (*PageID##* 646-62).

Dr. Onady also completed a psychiatric review technique and indicated that Plaintiff had marked restriction of her activities of daily living, moderate difficulties in social functioning, and marked deficiencies of concentration, persistence or pace. (*PageID#* 662).

A review of the ALJ's decision reveals a well-supported description of the medical source opinions and records. (*PageID##* 48-54). Contrary to Plaintiff's contentions, the ALJ provided sufficient information to show that she weighed the medical source opinions as the Regulations required. The ALJ correctly set out the legal criteria

13

applicable under the treating physician rule, and correctly recognized that if controlling weight is not due a treating physician's opinion under that criteria, the Regulations require an ALJ to continue weighing the treating physician's opinions under a number of factors. (*See PageID##* 50-51). The ALJ then correctly listed those factors consistent with the Regulations and case law. (*Id.*); *see also* 20 C.F.R. §404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544.

Next, the ALJ declined to credit Dr. Onady's opinions based on factors permitted by the Regulations. This appeared in the ALJ's finding that Dr. Onady's two opinions from February 2007 and May 2008 contained inconsistencies. The ALJ further explained there is no explanation in the record for this "significant inconsistency." (*PageID#* 51). In addition, the ALJ noted that "it appears that the claimant and her therapist discussed these disability forms before their completion, suggesting that many of these limitations were based on the claimant's own allegations and not on Dr. Onady's independent assessment." (*Id.*). Finally, The ALJ noted that Dr. Onady's opinion could not be given controlling, or even deferential, weight because it is also inconsistent with other substantial medical evidence in the record, including: the analysis by Dr. Lisa Cravens-Brown; Dr. Onady's own earlier assessment; and other evidence in the record demonstrating that Plaintiff actually goes out when she wants to and relates well to doctors. (*Id.*). The ALJ found that Plaintiff is compliant with appointment times, there was no indication in the record of suicidal ideation or psychiatric hospitalization, and, despite Plaintiff's allegations that she is too anxious to drive, she drove herself to therapy when her husband would not drive her. (*See PageID##* 51-52, 900). The treatment notes

from CCS indicate that Plaintiff's anxiety is primarily related to her husband's alcoholism and over-concern with her physical medical problems. (*See PageID##* 468-77, 753-844, 899-901). The fact that Plaintiff suffers from a mental impairment, however, is not enough to find that she is disabled. There must be evidence that Plaintiff cannot perform work-related activities for there to be a finding that her mental impairments are disabling.

The ALJ's conclusion that Dr. Onady's opinion was not entitled to controlling weight because of inconsistency was supported by substantial evidence of record. The ALJ examined the evidence of record and cited specific inconsistencies with other substantial medical and opinion evidence for discounting Dr. Onady's opinion as to the Plaintiff's disability. Accordingly, the Court finds the ALJ's weighing of the medical opinions in the record to be supported by substantial evidence.

Plaintiff next criticizes the ALJ's reliance on the opinions of a reviewing psychologist to justify her mental RFC assessment. (Doc. #6 at *PageID#* 912).

An ALJ should generally give more weight to a treating physician than a consulting source. *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)). Nevertheless, as implied above, "'[t]he [Commissioner] . . . is not bound by treating physicians' opinions, especially when there is substantial medical evidence to the contrary.'" (*Id.*). (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)). Consequently, "the Commissioner may reject conclusory treating-physician opinions in favor of consulting physician opinions that are supported by substantial evidence." (*Id.*). (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823

F.2d 922, 927 (6th Cir.1987)); *see also Price v. Comm'r Soc. Sec. Admin.*, 342 Fed. Appx. 172, 177 (6th Cir. 2009) ("Although the opinion of a treating physician generally is given more weight, this Court has recognized that consultative opinions may be credited where they are supported by the record."); *Blakley*, 581 F.3d at 409 ("'In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.'") (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

State agency psychologist, Lisa Cravens-Brown, Ph.D., reviewed the record on behalf of the Ohio BDD in March 2007. (*PageID##* 507-27). Dr. Cravens-Brown opined that Plaintiff was moderately impaired in stress tolerance and in social functioning due to a high amount of focus on her physical condition. (*PageID#* 508). Dr. Cravens-Brown concluded that Plaintiff was capable of performing simple to moderately complex tasks within her physical limitations when she was motivated to perform, there were regular work expectations, and few changes. (*PageID#* 512). She indicated that Plaintiff would be limited to occasional or intermittent contact with others. (*Id.*).

The undersigned also finds that the ALJ did not err in granting "greater" weight to the opinions of Dr. Cravens-Brown. (*PageID#* 52). Plaintiff argues that the ALJ failed to apply the correct legal criteria in weighing Dr. Cravens-Brown's opinion. Specifically, according to Plaintiff, Dr. Cravens-Brown reviewed the file in March 2007 and did not have the benefit of over two years of mental health progress notes, or the updated opinion from Dr. Onady completed in May 2008. (*See* Doc. #6 at *PageID#* 913).

The ALJ found that the objective findings in the record regarding Plaintiff's adjustment disorder and panic disorder with mild agoraphobia support the mental work restrictions to performing unskilled work and to jobs that involve only minimal contact with the general public. The ALJ restricted her to low stress jobs, no assembly line work, and jobs that do not impose production quotas. (*PageID##* 48-52). Although Plaintiff is certainly free to disagree with the opinions of Dr. Cravens-Brown, the Court must accept the ALJ's conclusion with regard to Dr. Cravens-Brown's opinion if it has a reasonable basis in the record and is made pursuant to the proper legal standards. *See Rabbers*, 582 F.3d at 651.

Plaintiff has not established that the ALJ erred as a matter of law in weighing these medical source opinions or that substantial evidence did not support the opinions of these medical sources. *See, e.g., Rogers.*, 486 F.3d at 234; *Wilson*, 378 F.3d at 541. Without such a showing, the Court is not free to re-weigh the medical source opinions or to resolve other evidentiary conflicts. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

## 2.

## Obesity

Plaintiff maintains that although the ALJ concluded her obesity was a severe impairment, the ALJ did not provide any explanation as to how obesity factored into her assessment of the RFC and work-related functioning. Plaintiff also contends the ALJ failed to consider the impact her obesity had in combination with her other severe impairments. Plaintiff argues that her orthopedic complaints – specifically her osteoarthritis in both knees, back, hips, and neck – effects her ability to function, and the ALJ failed to fully evaluate her obesity in accordance with SSR 02-1p.[7]

Obesity is defined in SSR 02-1p as "a complex, chronic disease characterized by excessive accumulation of body fat." 2002 WL 34686281, *2. SSR 02-1p further notes that the National Institutes of Health has established guidelines for classification of overweight and obese adults in its "Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults" ("Clinical Guidelines"). (*Id.*).

The Clinical Guidelines classify an overweight or obese individual based on that person's Body Mass Index (BMI).[8] (*Id.*). An adult with a BMI of 30.0 or above is considered "obese." (*Id.*). Obesity is further divided by the Clinical Guidelines into three

---

[7] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). Social Security Rulings have been assumed to be binding on the Commissioner in the same way as Social Security Regulations. *See Wilson v. Comm'r of Soc. Sec.*, 378, F.3d 541, 549 (6th Cir. 2004); *Ferguson*, 628 F.3d at 273, n.1. In this case, the Court makes the same assumption regarding Social Security Ruling 02-1p.

[8] The ratio of an individual's weight in kilograms to the square of his or her height in meters is the person's BMI. SSR 02-1p, 2002 WL 34686281, *2.

levels: Level I (BMI of 30.0-34.9); Level II (BMI of 35.0-39.9); and, Level III (BMI greater than or equal to 40.0). (*Id.*).

SSR 02-1p provides that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems," and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." (*Id.* at *3). Not surprisingly, therefore, SSR 02-1p explains that a claimant's obesity must be considered not only at Step 2 of the Commissioner's five-step evaluation process, but also at the subsequent steps. The Ruling provides that:

> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. . . . An assessment should also be made of the effect of obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. . . . [O]ur RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis . . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
>
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.

SSR 02-1p, 2002 WL 34686281, *6; *see also* 20 C.F.R. §404.1523 (explaining that if the Administration finds "a medically severe combination of impairments, the combined

impact of the impairments will be considered throughout the disability determination process.")

Plaintiff argues the ALJ erred because "she did not specifically address what consideration was given [to obesity]." (Doc. #6 at *PageID#* 913).  Plaintiff further contends the ALJ erred because she relied on Dr. Klyop's opinion, and Dr. Klyop "made no allowance for the impact of Plaintiff's obesity on her ability to function." (*Id.* at *PageID#* 914).  Plaintiff argues the ALJ "did not assess Plaintiff's obesity in the manner contemplated by SSR 02-1p, especially with respect to its effect in combination with her other impairments." (*Id.*).

Despite Plaintiff's contentions otherwise, the ALJ did properly consider her obesity throughout the five-step evaluation process.  At Step 2, the ALJ properly noted Plaintiff's obesity, and determined it is severe within the meaning of the Social Security Act and Regulations.  (*PageID#* 48).  At Step 3, the ALJ considered Plaintiff's impairments, and combination of impairments, but determined "[t]here are no medical findings that precisely meet or medically equal severity of an impairment contained in the Listing of Impairments."  (*PageID#* 49).  The ALJ was not required to further articulate the consideration given to obesity at this step.  *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006) ("Social Security Rule 02-1p does not mandate a particular mode of analysis.  It only states obesity, in combination with other impairments, "may" increase the severity of other limitations.  It is a mischaracterization to suggest that Social

Security Rule 02-1p offers any particular procedural mode of analysis for obese disability claimants.").

The ALJ's formulation of Plaintiff's RFC at Step 4 was likewise proper. The ALJ specifically explained that "[t]he impact of the claimant's obesity on her knee residuals and her spine arthritis and degeneration has been duly considered in the formulation of her residual functional capacity pursuant to the provisions of SSR 02-1p, and the restriction to light work will not exacerbate those conditions." (*PageID#* 54). The ALJ also noted that "[n]o treating source has opined that the claimant is disabled by physical impairments." (*Id.*). In this case, the ALJ specifically considered Plaintiff's obesity in formulating her RFC findings. *See Bledsoe*, 165 Fed. Appx. at 412 (ALJ's explicit mention of claimant's obesity, as well as crediting of an expert's report that considered claimant's obesity, were each deemed sufficient to show ALJ properly considered a claimant's obesity at Step 4); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) ("'Social Security Ruling 02-1p, 2002 SSR LEXIS 1 does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." (quoting *Bledsoe*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006)). In assessing Plaintiff's RFC, the ALJ imposed limitations and limited her to light work (*PageID#* 52), consistent with the physical RFC assessment by Gerald Klyop, M.D., the reviewing state agency's physician's assessment. (*PageID#* 54). Plaintiff argues this was improper because Dr. Klyop did not consider Plaintiff's obesity on her ability to function. (Doc. #6

at *PageID#* 914).  But Plaintiff's doctors did not diagnose her with or otherwise treat her obesity.[9]  And the ALJ gave Dr. Klyop's assessment "great weight", because it is consistent with the objective medical evidence in the records of Dr. Paley and Dr. Shaublin, and no treating source has opined that Plaintiff is disabled by physical impairments.  (*PageID#* 54).  Plaintiff also never alleged at any time to her treating or consulting physicians that her obesity resulted in work limitations.

At Step 5, the burden shifts to the Administration to show that there are other jobs in significant numbers in the economy that the claimant can perform consistent with her residual functional capacity, age, education, and work experience.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004); 20 C.F.R. §404.1520 (a)(4)(v).  The ALJ considered the claimant's age, education, work experience, and residual functional capacity, and concluded Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, and determined Plaintiff was "not disabled" as defined in the Social Security Act.  The ALJ adequately considered Plaintiff's obesity in combination with her other impairments throughout the sequential analysis.  Although Plaintiff may have desired more discussion regarding her obesity, the ALJ did not err: substantial evidence supports her findings and evaluation.

---

[9] In a case such as this, "[w]hen the evidence . . . does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body or BMI," it is up to the SSA to "ask a medical source to clarify the presence of obesity based on the medical findings and other evidence in the case record," or "use [its] judgment to establish the presence of obesity based on medical findings and other evidence in the case record . . . ." SSR 02-1p, 2002 WL 34686281, *3.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Commissioner's non-disability determination be affirmed; and,

2.      The case be terminated on the docket of this Court.


June 8, 2012                              _____s/Sharon L. Ovington_____
                                          Sharon L. Ovington
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).